SHAW, Justice
(concurring specially).
I concur with this Court’s dismissal of the various postjudgment motions and re *614 quests in this case that ask this Court to enter an order defying the decision of the Supreme Court of the United States in Obergefell v. Hodges, 576 U.S. —, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015). As discussed below, this Court’s decision, Ex parte State ex rel. Alabama Policy Institute, 200 So.3d 495 (Ala.2015) (“API”), no longer has a field of operation or any legal effect.

I. The procedural background of today’s ruling

API ordered the probate court judges of this State who were not subject to a contrary federal court injunction to continue to follow Alabama’s marriage laws.[46] As I stated in my dissent to that opinion, I am of the view that this Court never had jurisdiction in this case under Ala. Const. 1901, Art. VI, §. 140(b), or Ala.Code 1975, §§ 12-2-7(2) and (3). API, 200 So.3d at 553 (Shaw, J., dissenting). Furthermore, I am also of the view that the petitioners had no right under Alabama law to pursue the petition in their own names or in the name of the State. I further objected to addressing issues no party had raised. Id. In short, I concluded that the petition was never properly before this Court and should have been dismissed at the outset. I continue to adhere to those views and that conclusion.
Subsequent to, and perhaps as a result of, this Court’s decision in API, all of Alabama’s probate court judges were sued in the United States District Court for the Southern District of Alabama. Strawser v. Strange, 307 F.R.D. 604 (S.D.Ala.2015). All .are now subject to a federal class action and an injunction forbidding them from enforcing Alabama’s ban on the issuance of same-sex government-marriage licenses. Strawser v. Strange, 105 F.Supp.3d 1323 (S.D.Ala.2015).[47] Because of that federal court injunction, this Court’s decision in API, by its oum terms, no longer applies to them. See note 46, supra.
After the decisions in Strawser, one of the parties in this case filed in this Court a request to clarify and “reaffirm” the decision in API “despite” the contrary injunctions issued by the federal district court in Strawser. The Supreme Court of the United States later issued its opinion in Obergefell and held that the United States Constitution barred restrictions on the issuance of same-sex government-marriage licenses. This Court “invited” the parties to submit motions or briefs to address the impact of Obergefell. I did not concur with that invitation. In response, several parties in this case and others have now requested this Court to address the impact of Obergefell on API. Among the suggestions are that this Court can ignore Obergefell and that, essentially, this Court can and should order all probate court judges to ignore it too. As a result, we are urged to order our probate court judges to defy the federal court injunction against them. I initially found these post- *615 decision requests to be extraordinary in nature: As explained below, this Court does not ordinarily entertain motions to clarify past cases in light of new Supreme Court decisions, and the law is well settled that this Court can do nothing to allow the probate court judges of this State to ignore a federal court injunction and a Supreme Court decision.
When the Supreme Court of the United States issues a decision calling into question prior decisions of state courts, those prior state court decisions generally are not reopened. The same is true if this Court issues a decision calling into question its own past judgments or past judgments of lower courts. Any new issues are resolved in new litigation, if that is allowed under law. Post-decision filings, other than an application for rehearing,- do not demand the use of time and judicial resources by this Court. Cases must end, even if the law later changes. Our decision today refuses to grant the relief requested and should not be construed to mean anything else,[48]
Those requests — whether so intended— opened the door for additional opinions to be issued by any Justice of this Court wishing to expound on Obergefell. For the reasons explained above, I saw no need for this Court to respond to the resulting requests, and this Court correctly took no action.
However, on January 6, 2016, Chief Justice Moore, who until now has not voted in this case, issued an “administrative order” directing probate court judges to take a course of action contrary to the federal court injunction against them.[49] This ac *616 tion on his part, which I view as unauthorized,[50] now requires a response by this Court to the petitioners’ requests for clarification.

II. This Court cannot stop a federal court action

A decision by this Court cannot stop the issuance of federally mandated same-sex government-marriage licenses; as I have previously expressed, this Court has never been in a position definitively to rule on whether Alabama’s laws prohibiting same-sex government-marriage licenses were constitutional. Ex parte State ex rel. Alabama Policy Inst., (No. 1140460, February 13, 2015) (order calling for answers and briefs) (Shaw, J., dissenting),[51] and API, 200 So.3d at 553 (Shaw, J., dissenting). As is now demonstrated, Alabama’s probate court judges have always been subject to a federal court action, and the rulings of the federal district court have always had the potential of being underpinned by the decision in Obergefell, which the federal courts would have certainly enforced over the protestations of this Court.
We have now been invited to order Alabama’s probate court judges to violate a federal court injunction. Even if this Court had the authority or the inclination to issue such an order, which it does not, the order would accomplish nothing because, if our probate court judges actually followed such an order, their defiance of the federal court injunction would subject them to punitive fines, fees, and sanctions by the federal government, the price of which would have to be paid — at least in part — by the taxpayers and would not stop the enforcement of the federal court decisions. Further, such a course of action would damage the institution of the Alabama Supreme Court and the rule of law, and it would not stop the issuance of federally mandated same-sex government-marriage licenses.

A. All courts follow United States Supreme Court decisions

It has long been understood in American jurisprudence that the decisions of the Supreme Court of the United States are to be followed by lower courts. Obergefell *617 has been decided, and, as this Court has previously acknowledged: “Under Article VI of the United States Constitution, we are bound by the decisions of the United States Supreme Court.” Ingram v. American Chambers Life Ins. Co., 643 So.2d 575, 577 (Ala.1994). It is the accepted legal doctrine and the historic legal practice in the United States to follow the decisions of the Supreme Court as authoritative on the meaning of federal law and the federal Constitution. Arguments have been put forth suggesting that this doctrine and this practice are incorrect. Those arguments generally have not been accepted by the courts in this country. For example, in Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958), the Supreme Court of the United States rejected the argument by certain state officials that they were not bound by that Court’s decisions.[52]
The idea that decisions of the Supreme Court of the United States are to be followed is not something new or strange. Thus, the members of this Court who would follow the Obergefell decision would not, as either Chief Justice Moore or Justice Parker suggests, be “bow[ing their] knee[s] to the self-established judicial despots of America,” “blindly following] the unsubstantiated opinion of ‘five lawyers,’ ’•’ “ ‘shrink[ing] from the discharge’ ” of duty, “betray[ing]” their oaths, “blatantly disregarding] the Constitution,” standing “idly by to watch our liberties destroyed and our Constitution violated,” participating in the “conversion of our republican form of government' into an aristocracy of nine lawyers,” or be adhering to a perceived “evil.” 200 So.3d at 610, 611, 590, 591. They would, quite frankly, be doing what the vast majority of past and present judges and lawyers in this country have always assumed the Constitution requires, notwithstanding the unconvincing arguments found in the requests before us and in the specially concurring opinion of Chief Justice Moore. I charitably say the arguments are “unconvincing” because virtually no one has ever agreed with their rationales.
I would further suggest that the idea that a decision of the Supreme Court does not have application outside the parties to that particular case or outside the federal circuit from which it originated[53] is, to be blunt, just silly.[54] A statement by a high court as to how that court would rule in every case is one of the very basic definitions of “law”: lower courts follow higher court decisions because they know they *618 will be reversed by the higher court if they do not. The people, judges, and lawyers, in turn, rely on those decisions as statements of the “law.” People do not need to have the Supreme Court of the United States rule against them individually to know what that Court considers legal or constitutional. It is, to say the least, rather nonsensical judicial hairsplitting to suggest that the law has no application to people because they never had a court specifically render a judgment against them on that particular issue. Do we really think that it makes a difference that Obergefell did not originate in Alabama or that Alabama probate court judges were not parties to it? This peculiar argument, raised in the context of such strong opposition to Obergefell, simply looks like an excuse to avoid a court decision because one disagrees with it.
Conjuring up specious arguments to contend that the courts of this State suddenly, do not have to follow the Supreme Court — despite doing so for nearly 200 years — is embarrassing. It does nothing but injure public confidence in the integrity and impartiality of the judiciary.
I further reject any implication that the dissenting Justices in Obergefell have “intimate[d]” or implied that the decision should be defied. I note that in Davis v. Miller (No. 15-A250, August 31, 2015), a Kentucky state official, Kim Davis, applied in the Supreme Court of the United States for a stay of an injunction' that required her to issue federally mandated same-sex gove.rnment-marriage licenses. The application was denied without any written dissents. If the dissenting Justices in Obergefell were sending coded messages to invite state officials to defy Obergefell, then would they have not at least issued dissents to denying relief to Davis, who was such a state official?[55]
At least one Justice who dissented in Obergefell has previously suggested that when a judge disagrees with the law, defiance is not an option. Justice Antonin Scalia, in an article titled “God’s Justice and Ours,” First Things (May 2002), discussed the options of a judge morally opposed to the death penalty but called upon to rule in such a case:
“I pause here to emphasize the point that in my view the choice for the judge who believes the death penalty to be immoral is resignation, rather than simply ignoring duly enacted, constitutional laws and sabotaging death penalty cases. He has, after all, taken an oath to apply the laws and has been given no power to supplant them with rules of his own. Óf course if he feels strongly enough he can go beyond mere resignation and lead a political campaign to abolish the death penalty — and if that fails, lead a revolution. But rewrite the laws he cannot do.”
If a judge finds that he or she cannot abide by a controlling decision of a higher court, then that judge should resign from office. He or she should not indulge in the pretense that rebelling against a superior *619 court’s decision is an accepted judicial response. Such conduct does not show respect for or comply with the law; it does not promote public confidence in the integrity or impartiality of the judiciary. Instead, I believe that defiance would bring the judicial office into disrepute.
Additionally, I find curious this idea put forth by Chief Justice Moore that “‘the judges in every state’” may personally weigh the correctness of any Supreme Court decision and, if they disagree with it, then they may ignore it. 200 So.3d at 597. If this were indeed the case, the Constitution would in no way be protected; instead, it would mean that there would be a different Constitution . for every judge based on varying legal opinions. In McDonald v. Chicago, 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010), a mere “five Justices” of the Supreme Court held that the restriction in the Second Amendment on the federal government’s infringing on the right to keep and bear arms also, through the Fourteenth Amendment, restricted the states. I obey that decision, and not simply became I happen to agree %mth it If I did not agree with it, I would still reject the argument that such disagreement would give me the license to ignore it-.[56] Further, this Court recently held that an Alabama Code section that banned the possession of a pistol on the property of another violated the Constitution. Ex parte Tulley, 199 So.3d 812 (Ala.2015). If the lower court judge, in his “legal opinion,” disagrees with the “five lawyers” who concurred with this Court’s “opinion that purports to interpret” the Constitution, may he ignore it, lest he “betray” his “oath and blatantly disregard the Constitution”? 200 So.3d at 591. I think that this Court’s reaction to such defiance would swiftly squash any such notion.
B. This Court’s opinion of the correctness of Obergefell is not material to our probate court judges
Whether this Court defies the Supreme Court does not matter, of course, because it is not Obergefell that truly controls the probate court judges of this State. Instead, those probate court judges are bound by a federal court injunction that was issued pursuant to a federal statute, 42 U.S.C. § 1983, before Obergefell was even decided. Article VI of the Constitution, the “Supremacy Clause,” states that “the laws of the United States” trump state law: “This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.” So, even if one believes the notion that a Supreme Court decision is not a “law” the Supremacy Clause requires state judges to obey, the federal statute pursuant to which the federal court injunction was issued against Alabama probate court judges still trumps a contrary order by this State Court. When our probate court judges are faced with conflicting federal and state court orders — here a federal injunction issued pursuant to § 1983, and directed to parties in that case, versus this Court’s writ of mandamus — the federal court’s order controls. This is why no probate court in this State is currently complying with API or the Chief Justice’s January 6 administrative order and issuing government-marriage licenses to opposite-sex couples but not to same-sex couples. Is it *620 seriously to be suggested that a decision by the Supreme Court of Alabama issued on its own volition can override the decision in a federal court action where the parties are under the jurisdiction of the federal court? Perhaps it distracts too much from the rhetorical points about defying Obergefell to admit that the probate court judges still have to comply with the federal court injunction> no matter what we do in this case. Even if this Court were to right now reject the Supreme Court’s longstanding role as the final arbiter of the meaning of the Constitution and purport to defy its decision in Obergefell, Alabama’s probate court judges are still subject to a lawsuit in a federal district court that would not give a whit about this Court’s actions. In any event, if anyone believes that this Court can issue a ruling on these requests that would allow our probate court judges to legally continue Alabama’s prohibition on the issuance of same-sex government-marriage licenses, such belief is refuted by 200 years of law and practice. We can express our well founded frustration at the unprecedented nature of Obergefell, but we cannot stop its effect. Judges should not lead the people of this State to believe otherwise.
III. Challenges to Obergefell cannot come from this Court
The debate over the legal and moral propriety of same-sex government marriage will certainly continue; but that debate has necessarily shifted to the court of public opinion. The issue, for all practical purposes, is now a political one. The genius of our Founding Fathers is reflected in our constitutional form of government, which dictates that whether Obergefell stands the test of time or ultimately finds itself cast upon the trash heap of history depends upon the people of the United States, who serve as the ultimate repository of political power and whose collective voices can be heard through their elected representatives at both the federal and state levels. See U.S. Const., art. V (setting out the procedure for amending the Constitution). If there is to be a showdown with respect to this issue, it could never have been led by this Court. Such a showdown must pit the judicial will of the highest court in the land against the greater political will of the people of this country.
“To every thing there is a season, and a time to every purpose under the heaven ... a time to keep silence, and a time to speak.... ” Ecclesiastes 3:1-7. In accordance with my views concerning this Court’s lack of jurisdiction, I believe that this Court should have dismissed this case at the outset; however, it is now time for the people to speak their conscience on the issue of same-sex government marriage, if they so choose.
Chief Justice Moore and Justice Parker have assumed for themselves the mantle of authoiity to declare a decision of the Supreme Court of the United States an illegitimate nullity. Justice Parker goes further to declare that the rule of law is dead. These are bold declarations from “two lawyers” sitting on a court subject to the decisions of that higher court. To me, the irony of doing this while failing to address this Court’s own lack of jurisdiction and its failure to follow its own well established rules of review is inescapable.
Equally troubling to me are the veiled criticisms directed toward other Justices of this Court — quoted above — who, despite principled reservations to the contrary, might follow well recognized, uncontroversial precedents that require the acknowledgment of the binding impact of Oberge-fell on lower courts. I cannot speak for all judges who understand that the rule of law expressed by a court of competent jurisdiction, and not the contrary opinion of a *621 lower court judge, is the bedrock upon which our legal system was established and upon which its stability depends. I can say, however, that I have proudly fulfilled my oath of office since the day the people of Alabama first honored me in 2001 with the title “Judge” and placed on me the great responsibilities that go along with that title and that I have spent over 31 years in the service of my State striving to vindicate the rule of law and not to legislate from the bench. I am certainly no apologist for the Supreme Court of the United States, whose decisions have sometimes confounded me over the years.[57] But there is a right way and a wrong way under Alabama law and the United States Constitution for that Court’s decisions to be questioned and addressed. Judges should act like judges, not frustrated policymakers, or, as Justice Scalia has suggested, they should resign on principle. Failure to do either, in my opinion, degrades public confidence in the judiciary.

IV. Chief Justice Moore’s statement of nonrecusal

Normally, the Justices of this Court would not comment on another Justice’s reasons for declining to recuse himself or herself in a case. That is a matter for the recusing Justice’s conscience, and unlike the federal courts,[58] this Court has no mechanism for disqualifying one of its own members. However, Chief Justice Moore has used my name and my rationale in Ex parte Hinton, 172 So.3d 348 (Ala.2012), as support for the position he takes in his statement of nonrecusal. I am thus compelled to take the unusual step of disassociating my prior words from his current position.
Chief Justice Moore notes that he issued an administrative order on February 8, 2015, instructing the probate court judges that they were not required to comply with certain federal court injunctions in cases in which they were not named parties. In this case, one of the prior issues raised was whether the probate court judges were required to adhere to that administrative order.
In Hinton, I noted that there exists a reasonable basis to question a judge’s impartiality when he sits in appellate review of his decision^ as a lower court judge. Chief Justice Moore states that, for an analogous reason, he declined to vote in the previous orders in this case because his February 8,2015, order “addressed the issue whether probate judges in Alabama were bound by” certain federal court injunctions, which was one of the issues raised in the case. 200 So.3d at 562.
I noted in Hinton that the requirement to recuse one’s self did not apply when the *622 issues in the new case were not the same as the issues in the prior case the judge had addressed. ■ Chief Justice Moore states that the issue addressed in his February 8 order — whether the probate court judges were bound by certain federal court orders — was “mooted” by this Court’s decision in API. The Chief Justice states that there now exists a “new” issue: “[T]he effect of Obergefell on this Court’s mandamus order [the API decision] that the probate judges are bound to issue marriage licenses in conformity with Alabama law.” The “issue now before the Court,” he says, “‘does not involve a determination of the correctness, propriety, or appropriateness’” of his February 8 order. 200 So.3d at 563.
The February 8, 2015, administrative order is not the only order Chief Justice Moore has issued. On January 6, 2016, he issued a second administrative order. While stating in that order that he was “not at liberty to provide any guidance to Alabama probate judges on the effect of Obergefell on the existing orders of the Alabama Supreme Court,” he went on to make the same arguments he makes in his special writing to explain that Obergefell did not impact this Court’s prior decision. He then ordered the probate court judges to continue to apply API. These are the very things the motions before us argue and call upon the Court to address. Whether it can be claimed that the January 6 order did not actually address the same issues is not material; the focus should be on the appearance of impropriety, even if disqualification is not required by law. See Canon 3.C.(1) (“A judge should disqualify himself in a proceeding in which his disqualification is required by law or Ms impartiality might reasonably be- questioned....” (emphasis added)); Hinton, 172 So.3d at 354 (“ ‘[A] reasonable person has a reasonable basis to question the impartiality of a judge who sits ... to review his own decision....’” (quoting Rice v. McKenzie, 581 F.2d 1114, 1117 (4th Cir.1978))). The ethical considerations here involve judicial prudence and discretion, not technicalities. My statement in Hinton in no way provides Chief Justice Moore with justification to participate or vote in this case. Whether any participation or vote by him violates the Canons of Judicial Ethics is an issue I do not address.
BOLIN, J., concurs as to Part II.A.

. This Court’s decision applied only where probate court judges were not under a federal court, injunction. Specifically, this Court noted that the decision did not apply to Judge Don Davis, who was under a federal court order:.
“The final procedural issue we consider is whether the federal court’s order prevents this Court from acting with respect to probate judges of this State who, unlike Judge Davis in his ministerial capacity, are not bound by the order of the federal district court in Strawser [v. Strange (Civil Action No. 14-0424-CG-C, Jan. 26, 2015)]."
200 So.3d at 528 (emphasis added). Although this Court could have purported to order Judge Davis to disregard the federal court injunction, it did not do so.

. At this time, the issue of how much the taxpayers will have to pay as a result of this litigation is undetermined.

. For purposes of this Court’s order, no material distinction exists between the “dismissal," as opposed to the "denial,” of the post-judgment motions and requests. Whether cast as a substantive rebuke on the merits or as the rejection of a request to further consider a concluded case, this Court’s order ex- . presses a clear refusal to enter an order defying Obergefell.
Furthermore, the issuance of a certificate of judgment, which is also dictated by the order issued today, is a routine administrative task that is normally accomplished automatically by the clerk of the Court and is not voted upon by the Justices. A certificate of judgment in a mandamus matter is generally issued after the application for rehearing has been overruled, which occurred on March 20, 2015. However, because this case was not an appeal, the usual procedures for issuing a certificate of judgment under the Alabama Rules of Appellate Procedure, Rule 41, were not utilized. It is not- clear to me that this Court has a procedure for issuing a certificate of judgment in this type of case — an original petition for mandamus relief — or that, because this Court was sitting as a trial court, one is even needed. The issuance of a certificate of judgment is a rote entry. Further, as explained below, it does not, and cannot, mean that the parties in this case may defy Obergefell or any federal court injunction against them.

. Chief Justice Moore’s order stated that in API this Court "issued a lengthy opinion upholding the constitutionality of Article I, Sec- ' tion 36.03(b), Ala. Const.1901 (‘the Sanctity of Marriage Amendment’), and Section 30 — 1— 19(b), Ala.Code 1975 (’the Marriage Protec- ■ tion Act’).” He further noted that in API this Court stated that “ ‘Alabama probate judges have a ministerial duty not to issue any marriage license contrary to [the Sanctity of Mar- ■ riage Amendment or the Marriage Protection Act].’ ” In Strawser, the federal court declared § 36.03 and § 30-1-19 unconstitutional, declared that the probate court judges were enjoined from enforcing them, and de- , dared that the probate court judges could not deny a license "because it is prohibited by the Sanctify of Marriage Amendment and the Alabama Marriage Protection Act or by ... any . injunction issued by the Alabama Supreme • Court [i.e., API,] pertaining to same-sex marriage.” Strawser, 105 F.Supp.3d at 1330. The January 6 order "ordered and directed” that "the existing orders of the Alabama Supreme Court [i.e., API,] that Alabama probate judges have a ministerial duty not to issue any marriage license contrary to the Alabama Sanctify of Marriage Amendment or the Ala *616 bama Marriage Protection Act remain in full force and effect.” Ordering and directing that Alabama probate court judges had a "duty not to issue any marriage license contrary to the Sanctity of Marriage Amendment or the Marriage Protection Act” is contrary to the federal district court injunction, which said that the probate court judges could not enforce those provisions. The order did more than address the hypothetical impact of Obergefell on API; it ordered and directed that the probate court judges continue to follow API, a course of action that would be contrary to the federal court injunction. The failure of the order to mention the federal court injunction did not negate that reality.

. Although the Chief Justice of the Supreme Court has certain authority to perform “administrative tasks,” Ala. Const.1901, art. VI, § 149, it is this Court that possesses the authority to "govern! 1 the administration of all courts.” Ala. Const.1901, art. VI, § 150. The Chief Justice does not have the authority, on his or her own, to interpret the substantive legal effect of a decision of this Court and then to seek to enforce that decision against the parties in that action; in this case, it is this Court that possesses the "authority to interpret, clarify, and enforce its own final judgments.” State Pers. Bd. v. Akers, 797 So.2d 422, 424 (Ala.2000).

. I stated;
"In order to grant relief to the petitioners, this Court will have to conclude that a probate court is forbidden from following an Alabama federal district court's ruling ..., which ruling both a federal appellate court and the Supreme Court of the United States have refused to stay pending appeal. In my view, the petition does not provide an adequate foundation for reaching such a conclusion,”

. President Abraham Lincoln may have believed that he, as the head of a branch of the federal government, had the right to disavow a decision of the head of another coordinate branch of the federal government. President Lincoln was not a lower court judge. Further, I would be hesitant to cite President Lincoln as an authority for the idea that the states can rebel against the, federal government.

. To the extent it is suggested that various federal courts have held that Obergefell applied to only certain states, I disagree. In Waters v. Ricketts, 798 F.3d 682, 685 (8th Cir.2015), Rosenbrahn v. Daugaard, 799 F.3d 918 (8th Cir.2015), Jernigan v. Crane, 796 F.3d 976 (8th Cir.2015), and Marie v. Mosier, 122 F.Supp.3d 1085 (D.Kan.2015), the courts stated that Obergefell explicitly applied to the laws of other states only to note that it did not moot the litigation in those underlying cases; nevertheless, those courts specifically held that Obergefell rendered unconstitutional the same-sex government-marriage-license prohibitions they were addressing. To say that these cases somehow indicate that Obergefell does not impact Alabama has no basis.

.Although Alabama's probate judges are not parties in Obergefell, as noted above, they are parties to a lawsuit pending in a federal court that will enforce Obergefell. I find the suggestion that Obergefell somehow does not impact them strange.

. Recently, the Supreme Court issued a decision with no dissents in James v. City of Boise, — U.S. —, 136 S.Ct. 685, 193 L.Ed.2d 694 (2016), stating:
“As Justice Story explained 200 years ago, if state courts were permitted to disregard this Court’s rulings on federal law, 'the laws, the treaties, and the constitution of the United States would be different in different states, and might, perhaps, never have precisely the same construction, obligation, or efficacy, in any two stateá. The public mis-chiefs that would attend such a state of things would be truly deplorable,’ Martin v. Hunter’s Lessee, 1 Wheat. 304, 348, 4 L.Ed. 97 (1816).
“The Idaho Supreme Court, like any other state or federal court, is bound by this Court’s interpretation of federal law.’’
(Emphásis added.)

. McDonald was not a decision originating from Alabama. I could not ignore it based on the argument that it did not apply to Alabama parties or that I remained ignorant of how the Supreme Court would rule on the issue.

. To this day, I have expressed no opinion with respect to Obergefell or the legality of same-sex government-marriage licenses because, given my previously expressed views on this Court’s lack of jurisdiction in this case, the law will not let me. I have made no public comment on a proceeding pending before this Court, which is barred by Canon 3.A.(6), Alabama Canons of Judicial Ethics (“A judge should abstain from public comment about a pending or impending proceeding in any court, and should require similar abstention on the part of court personnel subject to his direction and control.”), and the Commentary to Canon 2, Alabama Canons of Judicial Ethics ("Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety.... He must, therefore, accept restrictions on his conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.”). Further, I have not conducted myself in a manner that calls into question my integrity and impartiality, and I have avoided conduct prejudicial to the administration of justice that would bring the judicial office into disrepute, which are barred by Canon 2.

. See 28 U.S.C. §§ 351-364.